<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

**ROCCO MALDONADO,**

                Petitioner,

        v.

**THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY & BRUCE DAVIS,**

            Respondents.

---

Civil Action No. 19-7051 (ZNQ)

**OPINION**

<u>**QURAISHI, District Judge**</u>

Petitioner Rocco Maldonado, a prisoner at East Jersey State Prison in Rahway, New Jersey, is proceeding *pro se* with the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Habeas Pet., ECF No. 1.) Respondents filed a response opposing relief, (Resp'ts' Resp., ECF No. 5), and Petitioner filed a reply, (Pet'r's Reply, ECF No. 13). For the reasons expressed below, the Court will deny the Petition and will not issue a certificate of appealability.

## I.     <u>BACKGROUND</u>

The Superior Court of New Jersey – Appellate Division (the "Appellate Division") summarized the relevant facts drawn from evidence presented at trial as follows:

> In the early morning hours of December 24, 2008, defendant broke into the residence of R.D. (Raymond) and his fiancée, D.S. (Denise),[1] in Bayville. At the time of the break-in, Raymond was asleep in the master bedroom and Denise was asleep on the couch. Denise testified she awoke from "a dead sleep" to find defendant leaning over her, wearing a mask and a knitted cap over his head. Defendant fastened zip ties to her right hand and put duct tape on her left hand. As defendant grabbed Denise's left hand, she heard him say, "Just cooperate, it's a raid." Observing something in

---

[1] Initials and pseudonyms are used to protect the victims' privacy.

defendant's hand that looked like a gun, Denise yelled, "[Raymond], get up.  There's this big fat guy in the living room.  I think he has a gun."

Hearing Denise's cries, Raymond testified that he got up and went down the hall, where he saw "someone standing in the center of the living room pointing a gun at me with a ski mask[, who] said, 'Just do what I say and you won't get hurt.'"  Defendant then ordered Raymond to step behind the couch, where he pointed the gun at the back of Raymond's head, leaned him over the couch, and told him to put his hands behind his back so he could put flex cuffs on him. Believing the gun was real, Raymond explained that he allowed defendant to handcuff him "[b]ecause I thought he was going to shoot me in the head."  Defendant then walked Raymond back around the couch and sat him near Denise.

When defendant attempted to apply the zip ties to Denise's other wrist, she refused to cooperate.  According to Raymond, at that point defendant "took that gun . . . and he just whaled her right in the head with it."  When Denise continued to struggle, Raymond said defendant "picked up [a] pillow, put it up to her head, put the gun to the pillow and fired."  When nothing happened to Denise, she and Raymond realized the gun was not real and started to fight back.

Raymond managed to free himself from the flex cuffs and started wrestling with defendant.  During the struggle, defendant's mask came off.  Also during the struggle, defendant reached behind Raymond, put the gun to the back of his head and fired it twice. Raymond recalled feeling "burning on the back of [his] head" at the spot where the weapon went off.

Defendant eventually fled and ran out the front door.  Raymond pursued defendant on foot, remaining fifty feet behind him to see where he was going, but not trying to overtake him.  According to Raymond, he never lost sight of defendant and saw him run to a house on Mill Creek Road, and then duck down behind a truck in the driveway.

Meanwhile, Denise called 9-1-1, and Officer Warren Black of the Berkley Township Police Department was dispatched at 4:40 a.m. Raymond knew Denise was on the phone with the police as he left the house and also knew the police would have to travel down Mill Creek Road to get to his house, so he waited in the middle of the street, where he flagged down Officer Black.  As soon as the officer got out of the car, Raymond pointed at the driveway where defendant was hiding.

Officer Black testified that he pulled out his weapon and ordered defendant out from behind the vehicle. Defendant came out with his hands up and was arrested. Officer Black asked defendant to put his hands on the hood of the police car and searched him.

After Officer Black read defendant his *Miranda* warnings from a card, he asked defendant what he was doing at the house. According to Officer Black, defendant responded by saying, "I'm sorry, I'm sorry, I broke in, I'm sorry."

Berkeley Township Police Officers Patrick Stesner and Clark Baranyay also responded to the 9-1-1 call. At the victims' house, they found Denise still visibly upset. The zip ties remained on her one wrist and duct tape on the other. She showed the officers the cut on the back of her head she received when defendant hit her with the gun. They also observed that Raymond still had the zip ties on his wrist, scratches on his body, and a burn mark on the back of his head.

Officer Baranyay testified that it was obvious there had been a struggle because the house was in disarray. In addition, the officers found a black ski mask on the floor, a long sleeved, XXL size jacket on the back of the couch, a "gray-colored jacket", in which there were a pair of tan gloves, and a black knit hat. The officers also saw a pillow with soot on it and red staining on one of the couch cushions. Under the Christmas tree, the officers found more zip-ties fastened together to make flex cuffs.

Officer Baranyay testified that he and the other officers who arrived at the scene conducted a "brief walk around the outside perimeter of the house," and noticed on the "front right bottom windows, there was a window pane broken out and it looked like somebody dug at the window sill from the outside." The size of the lower-portion of that window was approximately three feet long and two feet high. They also noticed one pane of a basement window was broken and had been duct taped back together. This basement window was open and unlocked upon Officer Baranyay's inspection. Raymond testified that the basement window was locked and did not have duct tape around any portion of the window on December 23 when he went to sleep.

On the ground outside the basement window, the police found a metal pry bar and a duffel bag that contained a small flashlight and additional flex cuffs, a glass cutter, and a stun gun. Raymond testified that the metal pry bar did not belong to him. The police

also discovered various other items outside the window, including candles, baby wipes, and a little black case.  Raymond testified that these items had been inside the house on a table.

On the morning of December 24, Berkeley Township Police Officer Jerry Bacon responded to a phone call from a man who resided near the victim's residence, who found a black bag in his yard earlier that day.  Officer Bacon retrieved the bag which contained zip ties, a deluxe voice disguiser with headphones, a crow bar, a black mag flashlight, a flat head screwdriver, black wire cutters, a black and yellow utility knife, duct tape, and a pair of black and yellow gloves.

Melissa Johns, an expert in DNA analysis, testified she was able to match a buccal swab obtained from defendant to the DNA profile she obtained from two different portions of the black face mask that was found at the victims' residence.  Additionally, the DNA from the gloves found on December 24, in the black bag at the nearby residence, matched defendant's DNA.  Johns also concluded that Denise was the source of the DNA profile obtained from the red staining on the couch.

On July 8, 2010 an Ocean County grand jury returned Indictment Number 10-07-1246 charging defendant with two counts of first-degree robbery, *N.J.S.A.* 2C:15-1 (counts one and two); second-degree burglary, *N.J.S.A.* 2C:18-2 (count three); fourth-degree possession of a prohibited device, a stun gun, *N.J.S.A.* 2C:39-3(h) (count four); fourth-degree possession of a weapon, imitation firearm, for an unlawful purpose, *N.J.S.A.* 2C:39-4(e) (count five); and fourth-degree possession of a weapon by a convicted person, *N.J.S.A.* 2C:39-7 (count six).

On November 5, 2010, the judge heard and denied defendant's motion to dismiss the robbery counts (counts one and two) and the possession of prohibited device count (count four).  After reviewing the grand jury transcript, the judge found that, in addition to assaultive conduct, defendant "acted in such a way that a reasonable person would believe that his purpose was to steal something."  In particular, the judge noted defendant's statement that this was a "raid" and directing the victims to cooperate.  The judge also found that there was sufficient circumstantial evidence that defendant possessed the stun gun as it was recovered outside of the victim's window, a place where defendant may have entered the victims' home.

Defendant was tried before a judge and jury over six days between September 28 and October 14, 2011.  On the second day of trial,

juror number two realized that the crime occurred in a neighborhood familiar to her. She further indicated that one of her basement windows had been broken around the same time period, but she was not robbed. After thorough questioning of the juror, both counsel agreed she was able to be impartial. The judge agreed and allowed her to continue her service. On October 5, 2011, the judge heard and denied defendant's motion to suppress oral statements defendant allegedly made to the police.

After the State presented its case, defense counsel moved to dismiss the robbery charges, asserting "the State has [not] made out a prima facie case with respect" to those charges. The judge denied the motion, finding that, after giving the State the benefit of all favorable testimony, a reasonable juror could find defendant guilty of all the elements of robbery. Defendant did not testify or present any witnesses.

After closing arguments, the judge gave his jury instructions. Notably, the judge did not charge aggravated assault and simple assault as lesser-included offenses of robbery. Furthermore, the judge did not define "attempted theft" when instructing the jury on the robbery charge but did define it with regard to the burglary charge.

On October 14, 2011, the jury found defendant guilty on counts one through five of the indictment. After the jurors returned their verdict, defendant pled guilty to the "certain persons" charge in count six.

On February 10, 2012, the judge sentenced defendant on count one to an extended term of forty years in custody with a mandatory eighty-five percent period of parole ineligibility pursuant to NERA. *N.J.S.A.* 2C:43-7.2. On count two, he was sentenced to eighteen years in custody with a mandatory eighty-five percent period of parole ineligibility. On count three, he was sentenced to nine years in custody with a mandatory eighty-five percent period of parole ineligibility. On counts five and six, he was sentenced to eighteen months in custody on each count, and count four was merged with count six. All sentences were ordered to run concurrently.

*State v. Maldonado*, No. A-4047-11T4, 2014 WL 7534015, at *1–4 (N.J. Super. Ct. App. Div. Jan. 15, 2015).

Petitioner appealed his conviction and sentence.  (*See* Direct Appeal Br., ECF No. 5-15.) Among other things, Petitioner argued that the trial court erred by: (1) denying Petitioner's motion to dismiss and motion for judgment of acquittal on the robbery counts; (2) failing to instruct the jury on lesser included offenses of robbery; (3) failing to define "attempt" in the robbery charge; and (4) failing to replace juror number two.  (*Id.*)  The Appellate Division rejected these arguments and affirmed on January 15, 2015.  *See Maldonado*, 2014 WL 7534015, at *15.  On July 10, 2015, the New Jersey Supreme Court summarily denied certification.  *See State v. Maldonado*, 116 A.3d 1073 (N.J. 2015) (unpublished table decision).

On November 23, 2015, Petitioner filed a petition for post-conviction relief ("PCR"). (PCR Pet., ECF No. 5-20, at 42–45.)[2]  The PCR petition alleged, in pertinent part, that the prosecutor violated Petitioner's due process rights by withdrawing a plea offer that Petitioner contends he had accepted.  (*See* Letter Br. in Supp. of PCR Pet., ECF No. 5-20, at 49–75.)  The PCR trial court denied Petitioner's petition on December 2, 2016.  (Order Den. PCR Pet., ECF No. 5-21, at 9.)  Petitioner appealed, arguing, in pertinent part, that the PCR trial court erred in denying the petition without affording him an evidentiary hearing regarding the State's withdrawal of the plea offer.  (PCR Appeal Br., ECF No. 5-19, at 28–34.)  On March 22, 2018, the Appellate Division affirmed, *see State v. Maldonado*, No. A-2368-16T3, 2018 WL 1415602, at *2 (N.J. Super. Ct. App. Div. Mar. 22, 2018), and the New Jersey Supreme Court summarily denied certification on December 17, 2018, *see State v. Maldonado*, 199 A.3d 278 (N.J. 2018) (unpublished table decision).

---

[2] For pin cites to ECF Nos. 5-15, 5-19, 5-20, and 5-21, the Court relies on the pagination automatically generated by the CM/ECF.

On February 26, 2019, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (*See* Habeas Pet.)  The petition raises the following grounds for relief:

> Ground One: The trial judge erred in denying Petitioner's motion to dismiss the robbery counts from the indictment and in denying Petitioner's motion for judgment of acquittal on the robbery at the end of the State's case because the State failed to prove that Petitioner committed a theft or attempted theft, therefore violating the Petitioner's right to due process.

> Ground Two: The trial court erred in failing to charge aggravated assault and simple assault as lesser included offenses of robbery, therefore violating the Petitioner's right to due process and a fair trial.

> Ground Three: The trial court committed reversible error when he failed to charge the jury on "attempt" because an attempted theft formed the basis for the robbery charge, therefore violating the Petitioner's right to due process and a fair trial.

> Ground Four: The trial court's failure to excuse juror [number two] on the second day of the trial[,] after she revealed that she lived in the same town as the victim and that she may have herself been the victim of a thwarted burglary[,] deprived the Petitioner the right to due process of law and a fair trial by an impartial jury.

> Ground Five: The Petitioner was denied his due process rights by the State withdrawing a plea offer of [twelve] years to robbery which was tendered by the prosecutor and accepted by the Petitioner but then withdrawn due to the State indicating the victims did not approve of the offer.

(*See* Habeas Pet.)

On May 15, 2019, Respondents filed a response opposing the Petition, (*see* Resp'ts' Resp.), and Petitioner replied on February 7, 2020, (Pet'r's Reply).  Accordingly, the parties have fully briefed the issues, and they are ripe for determination.[3]

---

[3] Petitioner subsequently filed a second PCR petition, raising claims not asserted in his habeas petition, which the Appellate Division denied as untimely.  *See State v. Maldonado*, No. A-2175-

II.   <u>**LEGAL STANDARD**</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which amended 28 U.S.C. § 2254, a district court "shall entertain an application for writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).

Moreover, district courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010). Specifically, district courts must defer to the "'last reasoned' decision of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009). Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

19, 2021 WL 1996926, at *3 (N.J. Super. Ct. App. Div. May 19, 2021). The New Jersey Supreme Court summarily denied certification on October 8, 2021. *See State v. Maldonado*, 259 A.3d 1288 (N.J. 2021) (unpublished table decision).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "Clearly established federal law for purposes of [Section 2254(d)(1)] includes only the holdings, as opposed to the dicta of the United States Supreme Court's decisions." *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

## III.    DISCUSSION

### A.    Whether the Trial Court Erred in Denying Petitioner's Motion to Dismiss and Motion for Judgment of Acquittal on the Robbery Counts (Ground One)

In his first claim, Petitioner alleges that the trial court erred in denying Petitioner's motion to dismiss the robbery counts from the indictment and in denying Petitioner's motion for judgment of acquittal on the robbery counts at the end of the State's case. (Habeas Pet. 19–22.) Specifically, Petitioner contends that the trial court should have granted those motions because there was insufficient evidence to support a finding that he committed or attempted to commit a theft, an element of robbery.[4] (*See id.*) According to Petitioner, the only evidence that Petitioner attempted to commit a theft was Denise's testimony that Petitioner said, "just cooperate, it's a raid." (*Id.* at 20.) Petitioner contends that this statement was insufficient to support a finding that he attempted to commit a theft because it evidenced his intention to commit a surprise attack on the victims rather than steal belongings from them. (*Id.* at 20–22.)

As an initial matter, Petitioner's argument concerning the motion to dismiss the indictment does not present a cognizable claim for federal habeas review. The Fifth Amendment right to an indictment by a grand jury does not apply to state criminal prosecutions. *See Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000); *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (noting that the Fourteenth Amendment's Due Process Clause has not been construed as incorporating the Fifth Amendment's right to indictment by a grand jury). Accordingly, "there is no federal constitutional impediment to dispensing entirely with the grand jury in state prosecutions," and a state may

---

[4] Under New Jersey law, theft, including an attempt to commit theft, is an element of robbery. *See* N.J. Stat. § 2C:15-1.  Thus, a defendant is guilty of robbery "if he or she (1) purposely takes a substantial step (2) to exercise unlawful control over the property of another (3) while treating another with, or purposely placing another in fear of, immediate bodily injury." *See State v. Farrad*, 753 A.2d 648, 654 (N.J. 2000).

10

proceed on a prosecutor's information if it so chooses. *Beck v. Washington*, 369 U.S. 541, 545 (1962). Moreover, even if the right to an indictment by a grand jury did apply to state criminal prosecutions, the adequacy of the evidence necessary to sustain an indictment is not reviewable by federal courts. *See Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."). Accordingly, the Court will deny Petitioner's claim regarding the motion to dismiss the indictment.

With respect to Petitioner's claim that the trial judge erred in denying Petitioner's motion for judgment of acquittal on robbery at the end of the State's case, the Appellate Division denied the claim, determining that, "viewing the totality of the evidence in the light most favorable to the State, a rational trier of fact could have found defendant attempted to commit a theft." *Maldonado*, 2014 WL 7534015, at *7. In particular, the Appellate Division noted that what Petitioner meant by "raid" was a question for the jury and that, in addition to that statement, the record also contained evidence that Petitioner restrained the victims, that Petitioner told them to cooperate and no one would get hurt, and that items had been removed from the victims' house before Petitioner assaulted them. *Id.* at *8.

As the New Jersey Supreme Court summarily denied Petitioner's petition for certification on direct appeal, *see Maldonado*, 116 A.3d at 1073, the Appellate Division's decision constituted the "last reasoned" decision of the state courts regarding this claim, *see Simmons*, 590 F.3d at 231–32. Accordingly, this Court applies AEDPA deference to the Appellate Division's decision. *See id.*

Petitioner fails to demonstrate that the Appellate Division's decision was contrary to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  First, Petitioner fails to identify any clearly established federal law in support of his claim.  (*See* Habeas Pet. 19–22.)  Instead, Petitioner merely rehashes the same arguments he made before the state courts without explaining how the Appellate Division's determination ran afoul of federal law. (*See id.*)

Second, the Appellate Division's determination was consistent with federal law.  The constitutional minimum standard governing a challenge to the sufficiency of the evidence on a habeas claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas sufficiency review.  *See id.*  The Appellate Division applied essentially the same standard in determining that the trial court did not err in denying Petitioner's motion for judgment of acquittal. *See Maldonado*, 2014 WL 7534015, at *7–8.  Accordingly, the Appellate Division's determination was not contrary to, nor an unreasonable application of, clearly established federal law.  *See Jackson*, 443 U.S. at 319.

Moreover, the Appellate Division's decision was not based on an unreasonable determination of the facts presented in the proceedings.  *See* 28 U.S.C. § 2254(d)(2).  Petitioner fails to challenge, let alone rebut with clear and convincing evidence, any of the individual factual determinations of the state courts.  *See Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004) (considering both Section 2254(d)(2)'s reasonableness determination, which turns on a

consideration of the totality of the "evidence presented in the state-court proceeding," and Section 2254(e)(1)'s presumption of correctness, which contemplates a challenge to the state court's individual factual determinations, in applying AEDPA's deference to state courts' factual determinations).  For example, Petitioner does not deny that he told the victims to "just cooperate, it's a raid," nor does he challenge the evidence in the record indicating that Petitioner restrained the victims and that items had been removed from the victims' house prior to Petitioner subduing them.  (*See* Habeas Pet. 19–22.)  Furthermore, the totality of the evidence indicates that the Appellate Division's decision was reasonable.  *See Lambert*, 387 F.3d at 235.  Viewing the evidence in the light most favorable to the prosecution, *see Jackson*, 443 U.S. at 319, it was reasonable for the state courts to determine that a rational trier of fact could have found Petitioner committed or attempted to commit a theft.  There was evidence suggesting that Petitioner broke into the victim's home, subdued them with zip ties, and told them to cooperate and no one would get hurt; and items had been removed from the house prior to Petitioner's assault of the victims. *Maldonado*, 2014 WL 7534015, at *1, *3.

As Petitioner fails to demonstrate that the Appellate Division's determination was contrary to, or an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts, Petitioner fails to carry his burden of demonstrating that he is entitled to habeas relief.  *See* 28 U.S.C. § 2254(d); *see also Harrington*, 562 U.S. at 103 (noting that it is the petitioner's burden to demonstrate that he is entitled to habeas relief). Accordingly, the Court will deny Petitioner habeas relief on Ground One.

13

**B.**     **Whether the Trial Court Erred in Failing to Charge the Jury on Lesser Included Offenses of Robbery (Ground Two)**

In Ground Two, Petitioner asserts that the trial court erred by failing to charge the jury on aggravated assault and simple assault as lesser included offenses of robbery. (Habeas Pet. 22–24.) This failure, he contends, violated Petitioner's right to due process. (*Id.*)

Preliminarily, the Court notes that it cannot grant Petitioner relief on Ground Two because Petitioner failed to exhaust this claim before the state courts. *See* 28 U.S.C. § 2254(b)(1)(A) (stating that an application for a writ of habeas corpus shall not be granted unless it appears that the applicant has exhausted available state remedies). To meet the exhaustion requirement, a petitioner must "fairly present" his federal claims to each level of the state courts empowered to hear them, either on direct appeal or in collateral post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999). This means that the petitioner must "present a federal claim's factual and legal substance to the state courts in a manner that puts [the state courts] on notice that a federal claim is being asserted." *McCandles v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

Here, Petitioner failed to exhaust Ground Two because he failed to "fairly present" a federal claim to the state courts. Although Petitioner raised a similar claim on direct appeal, Petitioner did not indicate that the claim was based on federal law or make any reference to the federal Constitution, federal cases, or even state cases employing constitutional analysis. (Direct Appeal Br. 41–50.) Thus, Petitioner failed to put the state courts on notice that he was asserting a federal claim, and Ground Two is unexhausted. *See McCandles*, 172 F.3d at 261; *see, e.g.*, *Maloney v. Nogan*, No. 14-1548, 2017 WL 1404322, at *5 (D.N.J. Apr. 19, 2017).

Nevertheless, a habeas court can, if appropriate, deny a petitioner's unexhausted claims on the merits pursuant to 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007). Where the state courts have not "reached the merits of a claim thereafter presented to a

14

federal habeas court," the federal court must "conduct a *de novo* review over pure legal questions and mixed questions of law and facts . . . ." *Id.* at 429.  Even on *de novo* review of a habeas claim, however, the state court's factual determinations are still presumed to be correct, unless a petitioner rebuts them with clear and convincing evidence.  *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court has never recognized that due process mandates lesser included offense instructions in non-capital cases.  *See Gilmore v. Taylor*, 508 U.S. 333, 342 (1993).  Regardless, "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982) (emphasis in original).  Moreover, a trial court's finding as to whether the evidence at trial warranted an instruction is a finding of fact entitled to the Section 2254(d) presumption of correctness.  *See Miller v. Fenton*, 474 U.S. 104, 112 (1985).

Here, the Appellate Division found that the evidence did not support an instruction on aggravated or simple assault.  *Maldonado*, 2014 WL 7534015, at *11.  Petitioner fails to rebut this finding by clear and convincing evidence.  (*See* Habeas Pet. 22–24.)  Petitioner merely reiterates his contention that there was insufficient evidence to support a finding of theft or attempted theft, and, therefore, the evidence warranted an instruction on assault.  (*See id.*)  As noted above, however, there was little, if any, evidence indicating that Petitioner intended to stop his crime after subduing the victims, and there was sufficient evidence tending to suggest that Petitioner committed, or attempted to commit, theft.  *See* Section II.B, *supra*.  As Petitioner fails to rebut the Appellate Division's finding that the evidence did not support an instruction on aggravated or simple assault, the Court must accept the Appellate Division's finding as true.  *See Miller*, 474 U.S. at 112; *Appel*, 250 F.3d at 210.  Accordingly, due process did not require the trial court to

15

instruct the jury on aggravated or simple assault, *see Hopper*, 456 U.S. at 611, and the Court will

deny Petitioner habeas relief on Ground Two.

C.     **Whether the Trial Court Violated Petitioner's Right to Due Process by Failing to Instruct the Jury on the Elements of "Attempt" (Ground Three)**

In Ground Three, Petitioner contends that the trial court erred in failing to instruct the jury

on the elements of attempt[5] in its robbery charge. (Habeas Pet. 25–26.)   At trial, the court charged

the jury on robbery in pertinent part as follows: "A person is guilty of robbery if[,] in the course

of committing a theft, he . . . knowingly inflicts bodily injury or uses force upon another or . . .

threatens another with or purposely puts him or her in fear of immediate bodily injury.   (Oct. 13,

2011 Trial Tr., ECF No. 5-11, at 129:16–20.)   The Court further explained that "an act is

considered to be in the course of committing a theft if it occurs in an attempt to commit a theft,

during the commission of the theft itself or in the immediate flight of the attempt or commission

of the theft."   (*Id.* at 130:8–12.)   The trial court did not define "attempt" at that time or while

explaining the other elements of robbery.   (*See id.* at 129:16–136:13.)   The trial court, however,

instructed the jury in its burglary charge that "[a] person is guilty of an attempt to inflict bodily

---

[5] Under New Jersey law, a person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for the commission of the crime, he:

> (1) Purposefully engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;
> (2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part; or
> (3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

N.J. Stat. § 2C:5-1(a).   Conduct held to constitute a substantial step under subsection (3) must be strongly corroborative of the actor's criminal purpose.   § 2C:5-1(b).

injury if he or she purposely commits an act which constitutes a substantial step toward the commission of bodily injury." (*Id.* at 141:3–6.)

The Appellate Division rejected Petitioner's claim on direct appeal. *Maldonado*, 2014 WL 7534015, at *11–12. It noted that jury instructions must not be read in isolation and determined that the trial judge's failure to define "attempt" within the robbery charge was not plain error, let alone error of a constitutional dimension, because the trial judge sufficiently defined "attempt" in instructing the jury on burglary. *See id.* at *12.

Petitioner is not entitled to relief on Ground Three because he fails to demonstrate that the Appellate Division's determination was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). Petitioner merely argues that "[t]he model charge in effect at the time of Petitioner's trial noted that when an attempted theft is at issue, the judge must define attempt in accordance with N.J.S.A. 2C:5-1a." (Habeas Pet. 25.) This argument fails to explain how the Appellate Division's decision ran afoul of clearly established federal law. Moreover, the Appellate Division's decision, which considered the trial court's instructions as a whole, including the definition of "attempt" provided in the burglary charge, is consistent with federal law. *See Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) ("[J]ury instruction[s] may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.").

Petitioner also fails to demonstrate that the Appellate Division's decision was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2). Petitioner does not contest the Appellate Division's finding that the trial court defined attempt in instructing the jury on burglary. (*See* Habeas Pet. 25–26.) Further, the Appellate Division's determination that the trial court did not err and sufficiently defined attempt is reasonable because the record indicates that

the trial court explained the "substantial step" component of attempt in instructing the jury on burglary.[6] (*See* Oct. 13, 2011 Trial Tr. 141:3–6.) Therefore, the Court will deny Petitioner relief on Ground Three. *See* 28 U.S.C. § 2254(d)(2); *Lambert*, 387 F.3d at 235.

**D.** **Whether the Trial Court Erred in Failing to Replace Juror Number Two (Ground Four)**

Next, in Ground Four, Petitioner contends that the trial court violated Petitioner's rights to due process and a fair trial by an impartial jury by failing to replace juror number two. (Habeas Pet. 26–28.) As noted above, prior to the beginning of the second day at trial, juror number two told the trial judge and counsel at a sidebar, "I honestly feel that as if what I'm saying has nothing to do with my ability, but due to the information that came out yesterday, I felt I needed to let you know that I lived in that town when this incident occurred." (Oct. 6, 2011 Trial Tr., ECF No. 5-8, at 3:23–4:20.) Juror number two further informed the trial judge and counsel that she had "a broken window in my house" and that she suspected that someone tried to enter her home while she was away, but that "nothing ever came of it." (*Id.* at 5:2–16.) When the trial judge asked the juror if she thought that this would affect her ability to be fair and impartial, she responded, "Absolutely not." (*Id.* at 5:17–20.) The trial judge determined that she could be fair and impartial, and the trial resumed. (*Id.* at 7:16–22.) Petitioner contends that the juror's "revelation had at least

---

[6] Even assuming *arguendo* that the Appellate Division's determination that the trial court sufficiently defined attempt and did not commit error was unreasonable because the trial court did not set forth the entire definition of attempt, Petitioner's claim still fails because he has not demonstrated that the "ailing jury instruction by itself so infected the entire trial that the resulting conviction violated due process," *Cupp v. Naughten*, 414 U.S. 141, 147 (1973), or that the instruction led to "actual prejudice" in the form of a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). First, the jury could have reasonably concluded that Petitioner completed a theft because there was evidence that items were removed from the victims' house. *See Maldonado*, 2014 WL 7534015, at *3. Second, the trial court's failure to set forth the entire definition of attempt did not prejudice Petitioner because the omitted portion of the definition would have provided only *additional* means by which to find that Petitioner attempted to commit theft. *See* N.J. Stat. §§ 2C:5-1(a)(1), (2).

'the capacity to affect the outcome of the case,' and the trial court erred in failing to recognize the prejudice and dismiss the juror."  (Habeas Pet. 28.)

The Appellate Division considered and rejected this claim on direct appeal.  *Maldonado*, 2014 WL 7534015, at *12–14.  It determined that the trial court did not abuse its discretion in keeping the juror because the juror merely lived in the same town where the crime occurred and did not know Petitioner, any witnesses, or any facts about the case.  *Id.* at *14.

Petitioner fails to demonstrate that the Appellate Division's determination was contrary to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  Petitioner's vague references to due process and the right to an impartial jury are insufficient to carry his burden.  *See Harrington*, 562 U.S. at 103.

Moreover, the Appellate Division's decision was consistent with federal law.  The Sixth Amendment of the United States Constitution and principles of due process guarantee a criminal defendant in state court the right to a trial by an impartial jury.  *Ristaino v. Ross*, 424 U.S. 589, 595 n.6 (1976).  Trial judges, therefore, must be "ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen," *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  Nevertheless, "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote," and the Sixth Amendment and due process "do[] not require a new trial every time a juror has been placed in a potentially compromising situation."  *See id.*  To that end, district courts have "wide discretion . . . [in] areas of inquiry that might tend to show juror bias."  *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991).  Here, the Appellate Division's determination that the trial court's actions fell within the wide discretion afforded to it in assessing the juror's possible impartiality was consistent with, and a reasonable application of, the aforementioned law.  *See Mu'Min*, 500 U.S. at 427.

Petitioner also fails to demonstrate that the Appellate Division's decision was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2). Although Petitioner "disagrees" with the trial court's finding that the juror could be fair and impartial, that finding is entitled to a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), and Petitioner fails to overcome that presumption with clear and convincing evidence. (*See* Habeas Pet. 26–28.) Moreover, the state courts' determination was reasonable because the juror was clear that she believed that she could be impartial, defense counsel did not challenge her belief or credibility, and the juror did not know Petitioner, the witnesses, or any facts about the case. (*See* Oct. 6, 2011 Trial Tr. 3:23–7:22.) Accordingly, the Court will deny Petitioner relief on Ground Four.

## E.    Whether the Prosecutor Denied Petitioner his Due Process Rights by Withdrawing a Plea Offer That Petitioner Had Accepted (Ground Five)

Finally, in Ground Five, Petitioner contends that the prosecutor violated Petitioner's due process rights by withdrawing a plea offer that Petitioner contends he accepted. (Habeas Pet. 29–30; Pet'r's Reply 1–2.) According to Petitioner, the assistant prosecutor wrote to Petitioner's counsel prior to presenting the case to the grand jury, indicating that the State was willing to offer a twelve-year term with an eighty-five percent parole disqualifier in exchange for Petitioner's entry of a guilty plea. (Habeas Pet. 29.) Petitioner asserts that he and his counsel accepted the offer and completed the necessary plea forms. (*Id.*) However, when Petitioner appeared in court for what he thought would be an entry of his guilty plea, the prosecutor withdrew the offer because it was not acceptable to the victims. (*Id.*) Petitioner argues that the State had not set forth any conditions in the plea offer that would have permitted it to rescind the offer based on opposition by the victims, and, therefore, the withdrawal of the offer violated Petitioner's due process rights. (*Id.* at 30.)

20

Once again, the Court cannot grant Petitioner relief on Ground Five because Petitioner failed to exhaust this claim before the state courts. *See* 28 U.S.C. § 2254(b)(1)(A). Although Petitioner raised this claim in his PCR petition, he did not raise it on PCR appeal. (*See* PCR Appeal Br. 22.) Instead, on PCR appeal, Petitioner raised a related but distinct claim asserting that the PCR trial court erred in denying the claim without an evidentiary hearing. (*See id.*) Accordingly, Petitioner failed to exhaust Ground Five. *See O'Sullivan*, 526 U.S. at 847. Nonetheless, the Court will consider Petitioner's claim on the merits pursuant to 28 U.S.C. § 2254(b)(2). *See Taylor*, 504 F.3d at 427.

Under federal law, "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry v. Johnson*, 467 U.S. 504, 507 (1984). Rather, "[i]t is the ensuing guilty plea that implicates the Constitution." *Id.* at 507–08.

Here, Petitioner concedes that the prosecutor withdrew the plea offer before its entry in court. (*See* Habeas Pet. 29.) Accordingly, the plea bargain was merely an executory agreement with no constitutional significance, and the prosecutor's withdrawal of the plea bargain did not violate Petitioner's due process rights. *See Mabry*, 467 U.S. at 507–08. Accordingly, the Court will deny Petitioner habeas relief on Ground Five.

## IV.    <u>CERTIFICATE OF APPEALABILITY</u>

A petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution

of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner's claims are all without merit and jurists of reason would not disagree with the Court's denial of Petitioner's habeas petition. Accordingly, Petitioner is denied a certificate of appealability.

## V.    CONCLUSION

For the reasons stated above, the Court will deny the Petition and will not issue a certificate of appealability. An appropriate order follows.

Date: March 4, 2022

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

22